**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| SONY MUSIC ENTERTAINMENT; ARISTA MUSIC; ARISTA RECORDS LLC; LAFACE RECORDS LLC; SONY MUSIC ENTERTAINMENT US LATIN LLC; ZOMBA RECORDING LLC; ULTRA RECORDS, LLC; PAYDAY RECORDS, INC.; ATLANTIC RECORDING CORPORATION; ELEKTRA ENTERTAINMENT GROUP INC.; FUELED BY RAMEN LLC; WARNER BROS. RECORDS  INC.; WARNER MUSIC NASHVILLE LLC;  RHINO ENTERTAINMENT COMPANY; BIG BEAT RECORDS INC.; BAD BOY RECORDS LLC; UMG RECORDINGS, INC.; CAPITOL RECORDS, LLC; and ROC-A-FELLA RECORDS, LLC, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CIVIL ACTION FILE  NO. _____ |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| SOCIAL STUDY MEDIA LLC; FIT RADIO LLC d/b/a FITRADIO; FIT RADIO PARTNERS LLC; and DOES 1-10, | ) ) ) ) ) | |
| Defendants, | ) ) | |
| _____ | ) | |

## COMPLAINT

Plaintiffs Sony Music Entertainment; Arista Music; Arista Records LLC; LaFace Records LLC; Sony Music Entertainment US Latin LLC; Zomba Recording LLC; Ultra Records, LLC; Payday Records, Inc.; Atlantic Recording Corporation; Elektra Entertainment Group Inc.; Fueled by Ramen LLC; Warner Bros. Records Inc.; Warner Music Nashville LLC; Rhino Entertainment Company; Big Beat Records Inc.; Bad Boy Records LLC; UMG Recordings, Inc.; Capitol Records, LLC; and Roc-A-Fella Records, LLC (collectively, "Plaintiffs"), by and through their attorneys, allege:

## INTRODUCTION

1.      Plaintiffs are record companies that, along with their affiliated labels, create, manufacture, and/or distribute the great majority of all recorded music legitimately produced and sold in the United States.

2.      Defendants own and operate a music streaming service known as "Fit Radio."  Defendants tout their service as the "#1 Workout Music App," and boast that they have millions of users.  Fit Radio has achieved this success because it infringes and facilitates the infringement of Plaintiffs' copyrighted sound recordings on a massive scale.

3.      In order to provide music to their "millions of users," Defendants unlawfully reproduce, distribute, and perform Plaintiffs' sound recordings by means of digital audio transmission, thereby directly infringing Plaintiffs' copyrights.  Defendants also induce, facilitate, and profit from the infringement of Plaintiffs' copyrights by their "DJs," who upload infringing content to Defendants' service.  Defendants encourage their DJs to copy and upload "the most popular songs" to Fit Radio, enabling Defendants to disseminate that music to the public. Defendants have knowledge of and materially contribute to the infringing activity of their DJs.  Defendants also have the right to supervise and/or control this infringement, from which they derive a financial benefit.

4.      By engaging in and facilitating the unlawful infringement of Plaintiffs' sound recordings, Defendants deprive Plaintiffs (and other copyright owners) of the benefits of their investment in these valuable works.  Defendants' unlawful conduct inflicts significant and irreparable damage on Plaintiffs' businesses, eroding authorized streaming, sales, and distribution of their valuable sound recordings through brick-and-mortar and online channels.

5.      Rampant copyright infringement of sound recordings over the internet and through mobile applications, including the infringement engaged in and enabled by entities such as Fit Radio, has resulted in significant harm to the music

industry, including to artists who rely on royalties from recorded music for their livelihood.  Plaintiffs are entitled to preliminary and permanent injunctive relief to stop Defendants' ongoing violation of Plaintiffs' rights, and to damages.

## NATURE OF THE ACTION

6.     This is a civil action seeking damages and injunctive relief for Defendants' ongoing willful and unlawful violations of the Copyright Act of the United States, Title 17, United States Code §§ 101, *et seq.*

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

8.     This Court has personal jurisdiction over Defendants.  On information and belief, each named Defendant is a limited liability company organized and existing under the laws of the state of Georgia, with its principal place of business in this District.

9.     Venue in this District is proper under 28 U.S.C. §§ 1391(b) and 28 U.S.C. § 1400(a).  On information and belief, a significant part of the acts of infringement complained of herein occurs or has occurred in this District.

## THE PARTIES

### *Plaintiffs*

10.    Plaintiff Sony Music Entertainment is a Delaware partnership with its principal place of business in New York, New York.

11.    Plaintiff Arista Music is a New York general partnership with its principal place of business in New York, New York.

12.    Plaintiff Arista Records LLC is a Delaware limited liability company with its principal place of business in New York, New York.

13.    Plaintiff LaFace Records LLC is a Delaware limited liability company with its principal place of business in New York, New York.

14.    Plaintiff Sony Music Entertainment US Latin LLC is a Delaware limited liability company with its principal place of business in Coconut Grove, Florida.

15.    Plaintiff Zomba Recording LLC is a Delaware limited liability company with its principal place of business in New York, New York.

16.    Plaintiff Ultra Records, LLC is a Delaware limited liability company with its principal place of business in New York, New York.

17.    Plaintiff Payday Records, Inc. is a New York corporation with its principal place of business in New York, New York.

18.     Plaintiff Atlantic Recording Corporation is a Delaware corporation with its principal place of business in New York, New York.

19.     Plaintiff Elektra Entertainment Group Inc. is a Delaware corporation with its principal place of business in New York, New York.

20.     Plaintiff Fueled by Ramen LLC is a Delaware limited liability company with its principal place of business in New York, New York.

21.     Plaintiff Warner Bros. Records Inc. is a Delaware corporation with its principal place of business in Burbank, California.

22.     Plaintiff Warner Music Nashville LLC is a Tennessee limited liability company with its principal place of business in Nashville, Tennessee.

23.     Plaintiff Rhino Entertainment Company is a Delaware corporation with its principal place of business in Burbank, California.

24.     Plaintiff Big Beat Records Inc. is a Delaware corporation with its principal place of business in New York, New York.

25.     Plaintiff Bad Boy Records LLC is a Delaware limited liability company with its principal place of business in New York, New York.

26.     Plaintiff UMG Recordings, Inc. is a Delaware corporation with its principal place of business in Santa Monica, California.

27.     Plaintiff Capitol Records, LLC is a Delaware limited liability company with its principal place of business in Santa Monica, California.

28.     Plaintiff Roc-A-Fella Records, LLC is a New York limited liability company with its principal place of business in New York, New York.

29.     Plaintiffs, along with their affiliated labels, are the copyright owners or owners of exclusive rights with respect to the great majority of copyrighted sound recordings legitimately produced and sold in the United States.  Under the Copyright Act, Plaintiffs have, *inter alia*, the exclusive rights to reproduce their copyrighted works, prepare derivative works based upon their copyrighted works, distribute copies or phonorecords of their copyrighted works, and perform their copyrighted works by means of a digital audio transmission to the public.

30.     In addition to manufacturing, distributing, and selling phonorecords in the form of CDs, vinyl records, and other tangible media, Plaintiffs distribute their sound recordings through authorized services in the form of digital audio files delivered or performed over the internet and through mobile applications.  In this manner, Plaintiffs and authorized services together provide a wide variety of lawful choices for consumers to enjoy recorded music that is distributed and performed over the internet and through mobile applications, including digital

download and/or streaming services like Apple Music, iTunes, Amazon, Spotify, and many others.

31.     Plaintiffs have invested and continue to invest significant money, time, effort, and creative talent to discover and develop recording artists, and to create, manufacture, advertise, promote, sell, license, and distribute sound recordings embodying their performances.  Plaintiffs, their employees, their recording artists, and others in the music industry are compensated for their creative efforts and monetary investments largely from the sale and distribution of sound recordings to the public, including through authorized online streaming and distribution.

### ***Defendants***

32.     On information and belief, Defendant Social Study Media LLC is a domestic limited liability company organized and existing under the laws of the state of Georgia, with its principal place of business in Atlanta, Georgia.

33.     On information and belief, Fit Radio LLC d/b/a FITRADIO is a domestic limited liability company organized and existing under the laws of the state of Georgia, with its principal place of business in Atlanta, Georgia.

34.     On information and belief, Fit Radio Partners LLC is a domestic limited liability company organized and existing under the laws of the state of Georgia, with its principal place of business in Atlanta, Georgia.

35.     Plaintiffs are informed and believe, and on that basis allege, that Defendants Does 1 through 10, along with Defendants Social Study Media LLC, Fit Radio LLC, and Fit Radio Partners LLC, own and/or operate the service known as "Fit Radio," or are otherwise responsible for and proximately caused the harm and damages alleged in this Complaint.  Plaintiffs are unaware of the true names and capacities of the Defendants sued herein as Does 1 through 10, and for that reason, sue such Defendants by such fictitious names.  Plaintiffs will seek leave of the Court to amend the Complaint to name such Defendants after their identities have been ascertained.

36.     Defendants Social Study Media LLC, Fit Radio LLC d/b/a FITRADIO, and Fit Radio Partners LLC, and Does 1-10 are collectively referred to as "Defendants."  Plaintiffs are informed and believe, and on that basis allege, that at all times relevant hereto, Defendants served as the agents of one another, or were otherwise working in concert with each other, in infringing and/or facilitating the infringement of, Plaintiffs' copyrights.

9

## DEFENDANTS' INFRINGING CONDUCT

**A.    The Design And Operation Of Fit Radio**

37.    Fit Radio is a music streaming service that Defendants make available through their website (www.fitradio.com) and through a personal mobile device application, and which offers its users access to DJ-programmed song playlists ("Song Playlists").  Defendants claim that Fit Radio is the "No. 1 Workout Music App Worldwide" and that it has millions of users.

38.    Fit Radio's Song Playlists can be accessed through one of four "Playlist Categories":  Genres, DJs, Activities, and BPM ("beats per minute"). Each Playlist Category, in turn, contains "Subcategories."  For example, Subcategories in "Activities'" include Elliptical, Stair Climber, and Walking; Subcategories in "Genres" include Top 40, Pop, and High Energy.



Figure 1: Activities Subcategories



Figure 2: Genres Categories

10

39.     When a user selects a Subcategory, Fit Radio streams a Song Playlist that falls within that Subcategory.  For example, if a user selects "Fireside," Fit Radio may return "Let Her Go" (Figure 3), a Song Playlist in that Subcategory.



Figure 3: Song Playlist Screen

40.    Alternatively, a user may search for a Song Playlist using the Search

Icon represented by a magnifying glass on the home screen (Figure 4):



Figure 4: Search Icon

41.    Using the search icon, a search for a known Song Playlist (*e.g.*, "Let

Her Go") will return that playlist (Figure 5), which can then be directly accessed

by clicking the link to the Song Playlist.



Figure 5: Song Playlist Search

42.     Once the Song Playlist is selected and begins to play, a user can press the "Track Icon" button on the Song Playlist screen (Figure 6) to reveal the tracks that comprise the Song Playlist.  Figure 7, for example, is the Playlist Track Screen of "Let Her Go."





Figure 6: Song Playlist                    Figure 7: Playlist Track Screen

43.     From the Playlist Track Screen, the user can select any sound recording further down the Track List.  Once the user selects a recording, it begins to play instantly.  In addition, a user can simply restart the Playlist, allowing the user again to choose whatever recording she wants to hear.  This functionality gives Fit Radio users on-demand and instant access to the sound recordings of their choice.

44.     Fit Radio provides on-demand music in other ways as well.  Users can utilize a Search Icon to find and instantly play a particular sound recording.  For

example, if a user wishes to hear the song "Irreplaceable" by Beyoncé, the user can

enter that title into the search feature.  The "results" are Song Playlists that include

the requested track.  The user can then select that track for immediate playback.



Figure 8: Title Search              Figure 9: Playlist Track Screen

45.     FitRadio's "Favorites" feature also allows easy on-demand access to a

sound recording.  For example, when "Let Her Go" is selected as a "Favorite," that

Song Playlist appears on the Favorites Screen, allowing users to access both that

Song Playlist and sound recordings on that Song Playlist on demand:



Figure 10: Heart Icon    Figure 11: Favorites    Figure 12: Track List

46.    Users can then "share" their "favorite" Song Playlists with others by

posting a link to the Song Playlist on Facebook or Twitter, or by texting or e-

mailing the Song Playlist to another person (Figure 13).  A person who wishes to

hear the shared Song Playlist must first sign up for Fit Radio.



Figure 13: Sharing Favorites

47.     Fit Radio's users can also search by artist.  When a user searches by artist, Fit Radio returns a list of Song Playlists that include at least one sound recording by that artist.  To listen to a recording by the searched-for artist, a user selects one of the Song Playlists and then selects the artist's recording from that playlist's Track List.  For example, a search for Beyoncé (Figure 14) returns a list of Song Playlists containing her recordings; the selected Song Playlist depicted in Figure 15 actually includes three Beyoncé sound recordings.



Figure 14: Artist Search          Figure 15: Track List

48.     On information and belief, Fit Radio makes copies of the sound recordings in a Song Playlist when the user first listens to the Song Playlist, and stores those copies locally on the user's device.  As shown in Figure 16, these

stored sound recordings are played for the user when a "weak or slow signal"

prevents Fit Radio from "load[ing] a new mix."



Figure 16: Locally Stored Recordings

49.     On information and belief, as soon as a given Song Playlist ends, Fit

Radio automatically switches the user to a new Song Playlist.

**B.     Fit Radio's DJs**

50.     On information and belief, some or all of the Song Playlists on Fit

Radio are programmed and uploaded by third-party DJs.  Defendants encourage

and induce DJs to include "the most popular songs" on their Song Playlists, and

specifically direct DJs to include commercial music purchased from "reputable

music stores" in their playlists.  Such uploads by DJs are not authorized by

Plaintiffs and directly infringe Plaintiffs' copyrights (as well as the copyrights of

others).

51.    Defendants further entice DJs to upload sound recordings to Fit Radio as a way for the DJ to "promote your personal brand."  Defendants also induce and encourage DJ submissions to Fit Radio by offering visibility, publicity, and "benefits to support" DJs in their infringing conduct, including marketing via Facebook ads, magazine editorials and email campaigns.

52.    On information and belief, all or virtually all of the sound recordings that DJs digitally copy and upload to Fit Radio are of commercial music in which the copyright is held by a third-party – in many instances, one of the Plaintiffs.  On information and belief, the DJs have not obtained permission from the copyright owners of the underlying sound recordings in connection with the reproduction and/or distribution of those sound recordings to Fit Radio.

53.    On information and belief, in many instances, Fit Radio's DJs alter the underlying sound recordings in the course of creating Song Playlists.  For example, DJs either slow down or speed up the tempo of a recording that they incorporate into a Song Playlist, so that the sound recording plays at a rate consistent with a particular number of beats per minute.  In addition, DJs "remix" the sound recordings that they incorporate into a Song Playlist (*e.g.*, altering the original harmonics, dynamics, and/or equalization of the sound recording, and/or integrating new elements into the sound recording).  On information and belief, Fit

Radio's DJs have not obtained permission from the copyright owners of the underlying sound recordings in connection with these alterations to the sound recordings, and/or with the reproduction and/or distribution of those altered sound recordings to Fit Radio.

54.     In addition to actively inducing and encouraging the Fit Radio DJs' infringing activity, and materially contributing to that infringement, Defendants also maintain and exercise the right and ability to supervise or control the infringement.  In order to have a playlist on Fit Radio, a potential DJ must submit a sample Song Playlist (a "demo") to Fit Radio, and Fit Radio's website touts that one of its "Premium Features" is that "[w]e screen, so you don't have to." Defendants also explain that their "[c]ontent managers perform daily quality insurance [sic] checks of all content available on FIT Radio to ensure user satisfaction," and that Defendants "spen[d] months planning and creating the makeup of each mix."

## C.     <u>Defendants Derive Financial Benefit From Their Infringement</u>

55.     After an initial trial period, Defendants offer users three options in order to continue using the service:  a monthly fee of $3.99 per month, a yearly fee of $27.99, or a one-time "lifetime" fee of $79.99.  Defendants have promoted the financial success of their infringement-based model, claiming that "Fit Radio

began operating in the black…three short months after launching its subscription

model in September 2013."

56.    Users of the Fit Radio service are drawn to the service at least in part

by the promise of access to popular sound recordings – many of which are owned

by Plaintiffs.  Defendants actively encourage their DJs to upload "the most popular

songs" to Fit Radio, and boast to their users that they provide "instant access to

their favorite music on demand."  Plaintiffs own or control the great majority of

"the most popular songs" in the United States.

57.    In their efforts to entice users to subscribe to Fit Radio, Defendants

tout both the interactive features described above and the availability of popular

sound recordings on Fit Radio, including sound recordings owned by Plaintiffs.

58.    For example, on their website, Defendants emphasize the "control"

that users can exercise over the music they can hear on Fit Radio:  "Want to know

what's coming next?  View the tracklist.  Already heard this song?  Skip it."

Similarly, Defendants highlight Fit Radio's search function as one of the

"Premium Features" that subscribers can access:  "Easy searches.  Scroll through

more than 40 music genres and workouts (like CrossFit, Latin Zumba, 10K Run),

or search by track and artist."  Defendants also promote their "Favorites" feature as

a means to immediately access a user's favorite sound recordings and to "share"

them with others:  "Feel free to play favorites.  Save and share Fit Radio DJs and tunes you can't live without."

59.    Defendants also direct users to where to find "top workout tracks" on Fit Radio, including sound recordings that, on information and belief, Defendants know or have reason to know are owned by Plaintiffs.  For example, in a December 2016 posting on the blog that Defendants maintain on the Fit Radio website, the Fit Radio "Music Director" identified "the top workout tracks of 2016 and where to find them on Fit Radio."  The list, which includes links to Song Playlists where the tracks can be found, includes several sound recordings to which one of the Plaintiffs holds exclusive rights, including popular sound recordings by the artists Sia, Jax Jones, and Galantis.

60.    Similarly, in a June 2016 blog posting, Defendants directed users to a "2016 Perfect Summer Playlist" and identified the tracks on that playlist. Numerous sound recordings that Defendants listed in the blog posting are sound recordings to which one of the Plaintiffs holds exclusive rights, including sound recordings by artists Justin Bieber, Green Day, Jason Derulo, Mike Posner, Magic, Farruko, AlunaGeorge, Will Smith, Shaggy, and Kygo.   Several of Defendants' other blog postings likewise use Plaintiffs' sound recordings to promote the Fit Radio service.

**D.**   **Defendants' Infringement Of Plaintiffs' Copyrights**

61.   Attached as Exhibit A, and incorporated herein, is an initial sampling of sound recordings to which Plaintiffs and/or their affiliated labels hold exclusive rights in the United States, and which have been and/or are being infringed by Defendants.  The copyright in each of these sound recordings is registered in the United States Copyright Office.  Plaintiffs intend to amend the Complaint at an appropriate time to provide an expanded list of works infringed by Defendants.

62.   Plaintiffs have not authorized Defendants to perform, reproduce, or distribute Plaintiffs' copyrighted sound recordings.  Defendants obtain a significant unfair advantage over competing legitimate music services, which negotiate and pay for the right to perform, reproduce, and/or distribute Plaintiffs' works. Defendants' unauthorized exploitation of Plaintiffs' copyrighted works deprives Plaintiffs of revenue to which they are entitled, and causes them irreparable harm.

63.   Defendants purport to rely upon statutory licenses under 17 U.S.C. §§ 112 and 114.  In fact, Defendants do not qualify for these statutory licenses because they fail to comply with many of the conditions that must be met for statutory license eligibility.  For example, and without limitation:

a)   **Defendants Unlawfully Provide an Interactive Service.**   17 U.S.C. § 114(d)(2)(A)(i) provides that the statutory license is not

22

available for a transmission that is "part of an interactive service."  17 U.S.C. § 114(j)(7) defines an "interactive service" as one that "enables a member of the public to receive a transmission of a program specially created for the recipient, or on request, a transmission of a particular sound recording, whether or not as part of a program, which is selected by or on behalf of the recipient."  Because, among other things, Fit Radio allows both searching for and the manual selection of particular sound recordings and artists on request, and allows for unlimited skipping of tracks, Fit Radio is an "interactive service" within the meaning of section 114(d)(2)(A)(i) & (j)(7), and thus is not eligible for a statutory license.

b)   **Defendants Unlawfully Announce Their Program Schedule in Advance.**  17 U.S.C. § 114(d)(2)(C)(ii) prohibits publishing "by means of an advance program schedule or prior announcement, the titles of the specific sound records to be transmitted."  As described above, Fit Radio publishes the entire program schedule for a given Song Playlist upon selection.

c)   **Defendants Violate the Archive Requirements.**  17 U.S.C. § 114(d)(2)(C)(iii) prohibits the transmission of certain "archived programs," including those shorter than five hours (or if longer than five hours, not made available for a period exceeding two weeks).  Fit Radio transmits "archived programs" (*i.e.*, on demand Song Playlists available in a predetermined order from beginning to end) that fall outside the limited allowances of section 17 U.S.C. § 114(d)(2)(C)(iii).

d)   **Defendants' Use of Plaintiffs' Sound Recordings is Without Authority of the Copyright Owner and the Recordings are not Lawfully Made.**  17 U.S.C. § 114(d)(2)(C)(vii) requires that "[p]honorecords of the sound recording [transmitted by the service] have been distributed to the public under authority of the copyright owner," and that services make their transmissions from copies "lawfully made under the authority of the copyright owner."  Likewise, 17 U.S.C. § 112(e)(1)(D) requires that "phonorecords of the sound recording have been distributed to the public under authority of the copyright owner" and that services make ephemeral copies from copies "lawfully made and

acquired under the authority of the copyright owner."  On information and belief, the phonorecords of the sound recordings transmitted by Defendants through Fit Radio are not made from copies "lawfully made and acquired under the authority of the copyright owner" – Plaintiffs have not authorized the copies of their sound recordings that DJs upload to Fit Radio and which Defendants use for transmission (whether in their original form or as unlawfully altered by the DJs) and, as a consequence, those copies are not "lawfully made."

e) **Defendants Violate the Text Data Requirements.**  17 U.S.C. § 114(d)(2)(C)(ix) requires that the transmitting entity (here, Defendants), among other things, "identif[y] in textual data…the title of the phonorecord embodying [the] sound recording."  Fit Radio does not identify the title of the phonorecord embodying the sound recordings that it performs.

f) **Defendants Unlawfully Allow Program Switching.**  17 U.S.C. § 114(d)(2)(A)(ii) prohibits causing a device receiving a transmission to "switch from one program channel to another."  As alleged herein, on information and belief, upon the

completion of a given Song Playlist, Fit Radio automatically switches the user to another Song Playlist.

## COUNT ONE

### [Direct Copyright Infringement]

64.    Plaintiffs repeat and reallege every allegation contained in paragraphs 1 through 63 as if fully set forth herein.

65.    Defendants' streaming of Plaintiffs' copyrighted sound recordings, including but not limited to, those sound recordings listed in Exhibit A, constitutes unauthorized public performance of Plaintiffs' copyrighted works by means of a digital audio transmission, in violation of 17 U.S.C. § 106(6).

66.    Defendants also reproduce and distribute Plaintiffs' copyrighted sound recordings, including but not limited to those copyrighted sound recordings listed in Exhibit A, including by causing copies of those sound recordings to be made, distributing them to users, and causing those recordings to be further reproduced and stored on users' devices.  Through this conduct, Defendants unlawfully reproduce and distribute Plaintiffs' copyrighted works in violation of 17 U.S.C. §§ 106(1) & (3).

67.    Defendants' infringement of Plaintiffs' rights in each of their copyrighted sound recordings constitutes a separate and distinct act of infringement.

68.    Defendants' acts of infringement, in violation of subsections (1), (3) and (6) of 17 U.S.C. § 106, are willful, intentional, and purposeful, in disregard of and indifferent to the rights of Plaintiffs.

69.    As a direct and proximate result of Defendants' infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to statutory damages pursuant to 17 U.S.C. § 504(c), up to the maximum amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).  In the alternative, at Plaintiffs' election pursuant to 17 U.S.C. § 504(b), Plaintiffs are entitled to their actual damages, and Defendants' profits from infringement, in amounts to be proven at trial.

70.    Plaintiffs are entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

71.    Defendants' conduct is ongoing, and, unless enjoined by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot be fully compensated or measured in damages.  Plaintiffs have no adequate remedy at law.

Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a preliminary and permanent injunction prohibiting infringement of Plaintiffs' exclusive rights.

## COUNT TWO

### [Vicarious Copyright Infringement]

72.     Plaintiffs repeat and reallege every allegation contained in paragraphs 1 through 71 as if fully set forth herein.

73.     As alleged herein, DJs who upload playlists to Fit Radio are engaged in repeated and pervasive direct infringement of Plaintiffs' exclusive right to reproduce, distribute, and perform their copyrighted works, and to prepare derivative works based on their copyrighted works.

74.     Defendants are vicariously liable for the infringing acts of Fit Radio's DJs.  Defendants have the right and ability to supervise and control the infringing activities that occur through the use of Fit Radio.  Defendants tout that "[they] screen, so you don't have to" and that their "[c]ontent managers perform daily quality insurance [sic] checks of all content available on FIT Radio to ensure user satisfaction."  In addition, at all relevant times, Defendants have derived a direct financial benefit from the infringement of Plaintiffs' copyrights, whose sound recordings also act as a draw for users.  Defendants are therefore vicariously liable

for the infringement of Plaintiffs' copyrighted sound recordings, including but not limited to those sound recordings listed in Exhibit A hereto.

75.     Defendants' infringement of Plaintiffs' rights in each of their copyrighted sound recordings constitutes a separate and distinct act of infringement.

76.     Defendants' acts of infringement are willful, intentional, and purposeful, in disregard of and indifferent to the rights of Plaintiffs.

77.     As a direct and proximate result of Defendants' infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to statutory damages pursuant to 17 U.S.C. § 504(c), up to the maximum amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).  In the alternative, at Plaintiffs' election pursuant to 17 U.S.C. § 504(b), Plaintiffs are entitled to their actual damages, and Defendants' profits from infringement, in amounts to be proven at trial.

78.     Plaintiffs are entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

79.     Defendants' conduct is ongoing, and, unless enjoined by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot be fully compensated or measured in damages.  Plaintiffs have no adequate remedy at law.

Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a preliminary and permanent injunction prohibiting infringement of Plaintiffs' exclusive rights.

## COUNT THREE

### [Contributory Copyright Infringement]

80.     Plaintiffs repeat and reallege every allegation contained in paragraphs 1 through 79 as if fully set forth herein.

81.     As alleged herein, DJs who upload playlists to Fit Radio are engaged in repeated and pervasive direct infringement of Plaintiffs' exclusive right to reproduce, distribute, and perform their copyrighted works, and to prepare derivative works based on their copyrighted works.

82.     Defendants are liable as contributory copyright infringers for the infringing acts of the DJs it selects for Fit Radio.  Defendants have actual and constructive knowledge of the infringing activity of the DJs, including without limitation through Defendants' "daily quality insurance [sic] checks of all content available on Fit Radio" and their identification and promotion of the availability of Plaintiffs' copyrighted works on the Fit Radio service.  By offering the Fit Radio service and engaging in the conduct described above, Defendants knowingly cause and otherwise materially contribute to these unauthorized reproductions of

Plaintiffs' copyrighted sound recordings, including but not limited to those sound recordings listed in Exhibit A hereto.

83.     Defendants' infringement of Plaintiffs' rights in each of their copyrighted sound recordings constitutes a separate and distinct act of infringement.

84.     Defendants' acts of infringement are willful, intentional, and purposeful, in disregard of and indifferent to the rights of Plaintiffs.

85.     As a direct and proximate result of Defendants' infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to statutory damages pursuant to 17 U.S.C. § 504(c), up to the maximum amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).  In the alternative, at Plaintiffs' election pursuant to 17 U.S.C. § 504(b), Plaintiffs are entitled to their actual damages, and Defendants' profits from infringement, in amounts to be proven at trial.

86.     Plaintiffs are entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

87.     Defendants' conduct is ongoing, and, unless enjoined by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot be fully compensated or measured in damages.  Plaintiffs have no adequate remedy at law.

Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a preliminary and permanent injunction prohibiting infringement of Plaintiffs' exclusive rights.

## COUNT FOUR

### [Inducement of Copyright Infringement]

88.    Plaintiffs repeat and reallege every allegation contained in paragraphs 1 through 87 as if fully set forth herein.

89.    As alleged herein, DJs who upload playlists to Fit Radio are engaged in repeated and pervasive direct infringement of Plaintiffs' exclusive right to reproduce, distribute, and perform their copyrighted works, and to prepare derivative works based on their copyrighted works.

90.    Defendants operate Fit Radio with the objective of promoting its use to infringe Plaintiffs' copyrights.  Defendants knowingly and intentionally induce, entice, persuade, and cause the Fit Radio DJs to infringe Plaintiffs' copyrighted sound recordings, including but not limited to those sound recordings listed in Exhibit A hereto.  Indeed, Defendants induce and encourage the DJs to copy and upload "the most popular songs" in order to attract users.  In addition, Defendants have failed to take any meaningful action to prevent the widespread infringement by their handpicked DJs, and in fact have taken affirmative steps to encourage, promote, and assist that infringement.

91.     Through these activities, among others, Defendants knowingly and
intentionally take steps that are substantially certain to result in direct infringement
of Plaintiffs' sound recordings, including but not limited to those sound recordings
listed in Exhibit A hereto, in violation of Plaintiffs' copyrights.

92.     The infringement of Plaintiffs' rights in each of their copyrighted
sound recordings constitutes a separate and distinct act of infringement.

93.     Defendants' acts of infringement are willful, intentional, and
purposeful, in disregard of and indifferent to the rights of Plaintiffs.

94.     As a direct and proximate result of Defendants' infringement of
Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to
statutory damages pursuant to 17 U.S.C. § 504(c), up to the maximum amount of
$150,000 with respect to each work infringed, or such other amounts as may be
proper under 17 U.S.C. § 504(c).  In the alternative, at Plaintiffs' election pursuant
to 17 U.S.C. § 504(b), Plaintiffs are entitled to their actual damages, and
Defendants' profits from infringement, in amounts to be proven at trial.

95.     Plaintiffs are entitled to their costs, including reasonable attorneys'
fees, pursuant to 17 U.S.C. § 505.

96.     Defendants' conduct is ongoing, and, unless enjoined by this Court,
will continue to cause Plaintiffs great and irreparable injury that cannot be fully

compensated or measured in damages.  Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a preliminary and permanent injunction prohibiting infringement of Plaintiffs' exclusive rights.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

(a)     For a preliminary and permanent injunction:

i.     requiring that Defendants, and their officers, agents, servants, employees, attorneys, and others in active concert or participation with each or any of them, cease infringing, or causing, enabling, facilitating, encouraging, promoting, inducing, and/or participating in the infringement of, any of Plaintiffs' copyrights protected by the Copyright Act, whether now in existence or hereafter created;

ii.     entry of an Order, pursuant to Sections 502 and 1203 of the Copyright Act (17 U.S.C. §§ 502, 1203), 28 U.S.C. § 1651(a), and this Court's inherent equitable powers:

(A)     enjoining Defendants, and all third parties with notice of the Order, including any app developers, app stores, web hosts, domain name registrars, domain name registries, and proxy or reverse proxy services, and their

administrators, from facilitating access to any or all domain names, URLs, apps, and websites through which Defendants have infringed Plaintiffs' copyrights;

(B)     enjoining all third parties with notice of the Order from maintaining, operating, and/or providing advertising, financial, technical, or other support to Defendants and any other apps, domain names, URLs, or websites through which Defendants infringe Plaintiffs' copyrights;

(b)     for statutory damages pursuant to 17 U.S.C. § 504(c), up to the maximum amount of $150,000 per infringed work, or such other amounts as may be proper under 17 U.S.C. § 504(c), or, in the alternative, at Plaintiffs' election pursuant to 17 U.S.C. § 504(b), Plaintiffs' actual damages and Defendants' profits from infringement, in amounts to be proven at trial;

(c)     for Plaintiffs' costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. §§ 505 and 1203(b)(4), (5) and otherwise;

(d)     for prejudgment and post-judgment interest; and

(e)    for such other and further relief as the Court may deem just and proper.


This 18th day of January, 2018.          Respectfully submitted,

TROUTMAN SANDERS LLP


/s/ James A. Lamberth
JAMES A. LAMBERTH
james.lamberth@troutmansanders.com
Georgia Bar No. 431851

600 Peachtree Street, N.E.
Suite 5200, Bank of America Plaza
Atlanta, GA 30308-2216
Telephone:  (404) 885-3362
Facsimile:  (404) 962-6611


SIDLEY AUSTIN LLP

ROLLIN A. RANSOM
(*Pro Hac Vice to be filed*)
RACHEL R. GOLDBERG
(*Pro Hac Vice to be filed*)

555 West Fifth Street
Los Angeles, CA  90013
Telephone:  (213) 896-6000
Facsimile:  (213) 896-6600

*Attorneys for Plaintiffs*

<u>CERTIFICATE OF COMPLIANCE</u>

The foregoing Complaint complies with Local Rule 5.1 and was prepared

using Times New Roman (14 point) type.

This 18th day of January, 2018.


/s/ James A. Lamberth
JAMES A. LAMBERTH